IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| TYLER TECHNOLOGIES, INC., | ) | Civil Action No. 3:22-1991-CMC |
| Plaintiff, | ) | |
| v. | ) | **ORIGINAL COMPLAINT** |
| LEXINGTON COUNTY, SOUTH CAROLINA, | ) | **(Jury Trial Demanded)** |
| Defendant. | ) | |

Plaintiff Tyler Technologies, Inc. ("Tyler") files this Complaint against Defendant Lexington County, South Carolina ("Lexington" or "the County"). In support of its claims herein, Tyler respectfully alleges the following:

## I. PARTIES

1. Tyler is a Delaware corporation that maintains a principal place of business at 5101 Tennyson Parkway, Plano, Texas 75024. Tyler is the largest software company in the nation that focuses solely on providing integrated software and technology services to the public sector. Tyler has more than 26,000 successful installations across more than 10,000 sites, with clients in all 50 states, Canada, the Caribbean, Australia, and other international locations. Tyler offers four solution groups, including Public Administration, Courts and Public Safety, K-12 Education, and Transformative Technology. Within Tyler's Public Administration solutions, Tyler provides solutions for the core functions of government: appraisal, tax collections, records, community development, utility billing, asset maintenance, finance, and administration. Tyler's appraisal and tax software solutions are in active use in hundreds of jurisdictions across the

country and help manage more than 97 million parcels of property and produce more than 20 million assessment notices each year.

2.     Defendant the County is a political subdivision of the State of South Carolina. The county is located in central South Carolina just southwest of Columbia. The County can be served with process by serving Jeff A. Hyde, Procurement Manager, Lexington County, or Lynn Sturkie, County Administrator, 212 South Lake Drive, Suite 503, Lexington, SC 29072.

## II.  JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Tyler and the County are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). The County is located in this District and a substantial part of the events or omissions giving rise to Tyler's claims occurred in this District. Furthermore, the parties, by agreement, consented to the courts located within the State of South Carolina.

## III.  FACTUAL BACKGROUND

5.     On June 26, 2014, Tyler and the County entered into an Agreement for Software Services (the "Agreement"), whereby Tyler contracted to provide certain services to the County in order to implement Tyler's iasWorld Tax Standard billing collection software system (the "System"). The System is designed to allow the County to assess real property for the purpose of determining taxable value and to collect the required taxes.

6.     The initial contract term was two years, followed by annual maintenance and support periods. The contractual Statement of Work ("SOW") outlined how the project would be implemented, including a "Gap/Fit Analysis" phase that would permit the parties to compare

the County's existing business processes with the functionality of the Tyler software. Where gaps were identified, the process was designed to identify those gaps and allow for potential changes to County procedures. If the County did not want to change its business processes based on the gap analysis, then there would need to be customized modifications to the software that would result in a change in project scope and, potentially, cost and timing.

7. During the Gap/Fit Analysis, the County struggled to identify and document its business processes and to build corresponding specifications for moving forward. The County frequently sought to mimic their legacy software system instead of agreeing to the existing functionality of Tyler's software, requiring customization and resulting in adjustments to project scope and sometimes lengthy delays in the project schedule. The Gap/Fit Analysis ultimately took years for the County to complete.

8. Even after implementation began, Tyler would frequently get County sign-off on software deliverables only to be told later that the County wished to adjust the software's as-designed functionality. The County refused to adjust their processes, instead insisting on costly and lengthy modifications and customization that continued to impact project scope and timing. In addition, the County took responsibility for its own data conversion—a critically important aspect in the implementation of a new software system. Issues with data conversion were a regular source of problems that required re-working and created delays. In addition to the delays created by the County's indecisiveness, the implementation encountered a number of issues that are common in complex software implementations of this nature. These issues led to a delay in the project's originally anticipated implementation date.

9. Despite the numerous challenges, Tyler worked diligently for years to implement the System. By the spring of 2021, the County had determined that it wanted to pursue an

aggressive path toward "go-live" for the system. On May 19, 2021, Tyler and the County conducted an all-day meeting to establish a feasible go-live plan. Based on this meeting, the parties tentatively targeted an October 2021 go-live for the software. Subsequently, and prior to August 27, 2021, the target go-live date of October 2021 was moved to December 2021 by mutual agreement of Tyler and the County.

10. Tyler believed that the final stages of the implementation were going smoothly and that go-live would be accomplished in a timely manner. The project moved primarily into a final testing stage, with the County responsible for testing in a test environment that Tyler was not permitted to access.

11. On August 27, 2021, Tyler received a letter from the County suggesting that Tyler was in breach of the Agreement and giving notice that certain identified issues needed to be fully resolved during the 30-day cure period or the Agreement would be terminated.

12. Tyler analyzed the August 27, 2021 letter in detail and identified 74 discrete items in 7 categories that the County wished to have resolved. By September 24, 2021 (within the 30-day cure period), Tyler had addressed, resolved, and delivered all 74 items. In addition, immediately following the receipt of the August 27, 2021 letter, Tyler established a protocol for weekly executive calls with the County to facilitate progress on testing and other aspects of the final implementation. Tyler also devoted additional resources to assist with this project, including resources for testing, training, data conversion, and additional project customization.

13. Data conversion issues continued to plague the project even in the final stages. When issues were identified, Tyler immediately provided fixes to the County. After Tyler addressed all of the issues in the August 27, 2021 letter, the County continued to test the System. Tyler was not notified of any material issues resulting from the County's testing. On October 25,

2021, the County advised Tyler that testing would be limited because of the opening of the 2021 tax notice period. That was the last substantive communication Tyler received regarding project implementation.

14. On November 5, 2021, Tyler received a letter from the County purporting to terminate the Agreement for cause and asserting that Tyler was in breach. In response, Tyler disputed that it was in breach, insisted that any termination would have to be for convenience, and invoked the dispute resolution mechanisms in the Agreement.

15. On December 7, 2021, as part of the parties' efforts to resolve the dispute amicably, Tyler received a letter from the County that purported to identify certain project issues that the County believed had not been addressed. On December 20, 2021, Tyler responded emphasizing that Tyler had, in fact, addressed all of the open issues identified in the August 27, 2021 letter (along with various others identified on the parties' SharePoint issues log) within the cure period. The County's December 7, 2021 list either identified new issues that had not been previously raised or re-asserted issues that had already been cured and were awaiting County testing. Tyler reiterated that there was no basis for a termination for cause.

16. For the next several months the parties continued to discuss a resolution and, on April 12, 2022, the parties entered into an Agreement to Mediate. On June 15, 2022, the parties participated in an agreed mediation session, but were unable to successfully resolve this dispute.

17. Tyler continues to maintain that it has not breached the Agreement and that, if it did, it cured those breaches in a timely manner. Furthermore, Tyler remains ready, willing, and able to perform its obligations in the Agreement. If the County insists on a termination of the Agreement, there is no basis to allow a termination for cause. Instead, a traditional termination for convenience is the only permitted option. Per a termination for convenience, Tyler is entitled

to be paid on outstanding invoices for work already performed. At this time, the outstanding amounts due Tyler are $409,420 for invoiced, unpaid fees and $261,557 for services delivered but not yet invoiced, for a total of $670,977.

## IV.  CAUSES OF ACTION

### COUNT I. – BREACH OF CONTRACT

18. Tyler re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

19. Tyler and the County entered into a valid, binding, and enforceable contract as described herein and as evidenced by the Agreement and other relevant ancillary documents.

20. Tyler performed its obligations under the contract, and at all relevant times Tyler has been willing and able to perform its obligations under the Agreement.

21. The County has materially breached the contract by failing to pay for services Tyler provided it under the Agreement and by attempting to wrongfully terminate the Agreement purportedly for cause.

22. As a direct and proximate result of the County's material breaches of contract, Tyler has suffered damages and is entitled, among other things, to recover its damages and/or receive equitable relief, in an amount to be determined at trial.

### COUNT II. – UNJUST ENRICHMENT

23. Tyler re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

24. Tyler conferred a significant benefit on the County by providing over $670,000 of implementation services to the County. The County was aware that it was receiving the benefit and that the services had value. The County was aware that Tyler expected to be paid for the

services. Under the circumstances, it would be unjust to allow the County to retain the benefit of those services without making payment to Tyler.

25. As a direct and proximate result of the County's material breaches of contract, Tyler has suffered damages and is entitled, among other things, to recover its damages and/or receive equitable relief, in an amount to be determined at trial.

## COUNT III. – DECLARATORY RELIEF

26. Tyler re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

27. Pursuant to 28 U.S.C. § 2201, Tyler seeks the following declaratory relief from this Court, declaring Tyler's rights under the Agreement:

> (i). Tyler's actions in connection with the implementation of the System have been consistent with the obligations imposed by the Agreement, and Tyler has not breached the Agreement; and
>
> (ii). The County has improperly sought to terminate the Agreement for cause in breach of the Agreement.

## PRAYER FOR RELIEF

**WHEREFORE,** Tyler requests that this Court grant it judgment against the County and award to Tyler:

> (i). Tyler's actual damages in excess of the minimum jurisdictional limits of this Court;
>
> (ii). the declaratory relief outlined above;
>
> (iii). pre-judgment interest as may be provided by law;

(iv).   necessary and reasonable attorneys' fees and costs of court through trial and appeal of this action;

(v).   post-judgment interest at the highest lawful rate from the date of judgment until such judgment is satisfied; and

(vi).   such other and further relief to which Tyler may be entitled.

A JURY IS RESPECTFULLY DEMANDED TO TRY THOSE ISSUES SO TRIABLE.

Respectfully submitted,

**K&L GATES LLP**

Charleston, South Carolina
Dated: June 23, 2022

/s/ *Tara C. Sullivan*
Tara C. Sullivan
Federal ID No. 11095
Email:  tara.sullivan@klgates.com
134 Meeting Street
Suite 500
Charleston, SC  29401
Telephone: 843.579.5600
Facsimile: 843.579.5601

Beth W. Petronio (pro hac forthcoming)
Texas Bar No. 00797664
Email: beth.petronio@klgates.com
1717 Main Street
Suite 2800
Dallas, Texas 75201
Telephone: 214.939.5500
Facsimile: 214.939.5849

**ATTORNEYS FOR
TYLER TECHNOLOGIES, INC.**